UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Criminal Case No.: 6:11-CR-356-ORL-36DAB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

SHELDON JOEL RAMNARAINE,

     Defendant.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255

The Defendant, SHELDON JOEL RAMNARAINE, through undersigned counsel hereby files his Memorandum in Support of his Motion to Vacate Pursuant to 28 U.S.C. § 2255. In support thereof, Mr. Ramnaraine states as follows:

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

On October 26, 2011, Mr. Ramnaraine was indicted and charged with Count 1 distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(B) and (b)(1) and Count 2 possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). [DE1].

On March 8, 2012, upon the advice of Mr. Blankner, Mr. Ramnaraine entered an open plea to both counts of the indictment before United States Magistrate Judge David A. Baker. [DE45]. On July 12, 2012, Mr. Ramnaraine was sentenced to serve 87 months imprisonment followed by a 15-year term of supervised release. [DE59]. Thereafter, Mr. Blankner filed Notice of Appeal [DE60] and submitted an Initial Brief before the Eleventh Circuit Court of Appeals. The appeal was subsequently dismissed for lack of prosecution due to Mr. Blankner's repeated violations of orders by the Court of Appeals. [DE79].

1

On July 18, 2014, Mr. Ramnaraine, through new counsel Richard Klugh, Esq., filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("first Motion to Vacate") raising three grounds for relief: (1) Defense Counsel was ineffective in allowing the direct appeal to be dismissed due to his repeated violations of orders by the Court of Appeals; (2) Defense Counsel was ineffective in failing to move to suppress inadmissible evidence used by the Government; and (3) Defense Counsel was ineffective in failing to challenge undue distribution enhancements and material misinformation. [DE80]. This Court granted the § 2255 as to claim one, dismissed claims two and three without prejudice, vacated its judgment and reimposed the sentence to permit Mr. Ramnaraine to appeal. [DE81; DE82; DE83, DE84]. Mr. Ramnaraine's conviction was affirmed on appeal and certiorari was denied on October 1, 2018. [DE93; DE94]. Accordingly, his Motion pursuant to 28 U.S.C. § 2255 is timely filed.

Mr. Ramnaraine's Affidavit addressing his interaction with law enforcement and Mr. Blankner's representation is attached as Exhibit A.

## II.    LEGAL ARGUMENT

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court identified two prongs to any claim of ineffective assistance of counsel. First, the Court must determine whether counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Second, the Court must determine whether the deficient performance "prejudiced" the defendant. *Id.* at 687.

### A.    COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MERITORIOUS MOTION TO SUPPRESS

Mr. Ramnaraine asserts that counsel was ineffective for failing to file a motion to suppress on several independent grounds:  (1) law enforcement detained him and interrogated him for hours without the benefit of having been advised of his *Miranda* rights; (2) Mr. Ramnaraine's alleged

2

confession was involuntary; (3) Mr. Ramnaraine's consent to a search of his dorm room was involuntary, or regardless, any contraband found was the fruit of the poisonous tree, tainted by his involuntary confession; and (4) law enforcement exceeded the scope of Mr. Ramnaraine's consent when they seized items outside the express dictates of the signed consent form and without evidentiary value.

It is well-established that a defendant may assert the failure to file a meritorious motion to suppress in a § 2255 motion.[1] *See Tho Van Huynh v. King*, 95 F. 3d 1052, 1057-58 (11th Cir. 1996) (explaining that a decision to delay or simply not file a meritorious motion to suppress is objectively unreasonable). In considering prejudice in this context, the Court must consider whether the failure to file a motion to suppress rendered the proceeding itself unfair, even if such failure cannot be shown by a preponderance of the evidence to determine the outcome. *Smith v. Dugger*, 911 F. 2d 494, 498 (11th Cir. 1990).

## 1. LAW ENFORCEMENT VIOLATED RAMNARAINE'S FIFTH AMENDMENT RIGHT WHEN THEY INTERROGATED HIM

### a. LAW ENFORCEMENT INTERROGATED RAMNARAINE IN VIOLATION OF *MIRANDA*

The right to be advised of *Miranda* warnings attaches when custodial interrogation begins. *United States v. Acosta*, 363 F. 3d 1141 1148 (11th Cir. 2004). A defendant is in custody for the purposes of *Miranda* when there has been a formal arrest or restraint on freedom of movement of the degree associated with formal arrest. *United States v. Street*, 472 F. 3d 1298, 1309 (11th Cir. 2006). The test is objective: 'custody' is defined from the perspective of a reasonable innocent

---

[1] Mr. Ramnaraine also asserts that he is entitled to an evidentiary hearing on the merits of the motion to suppress. *See Cave v. Singletary*, 971 F. 2d 1513, 1516 (11th Cir. 1992) (finding that a petitioner is entitled to an evidentiary hearing if the facts he alleges, if proven, would entitle him to relief).

3

person. *Id.* The determination must be made based on the totality of the circumstances. *Id.* In considering whether a defendant is "in custody," several factors must be considered: whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance would be compelled. *Street*, 472 F. 3d at 1309. Courts can also consider the location of the questioning, its duration, whether law enforcement deceived the defendant during questioning, physically restrained the defendant, or released the defendant at the end of the encounter. *See Howes v. Fields*, 565 U.S. 499, 508 (2012). A person is "interrogated" if they are subjected to direct questioning or any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Endress v. Dugger*, 880 So. 2d 1244, 1248 (11th Cir. 1989).

In the instant case, Mr. Ramnaraine was confronted by two FBI agents ("Agents") and an armed University police officer as he exited class on the University of Florida campus. The Agents requested and thereafter retained Mr. Ramnaraine's identification.  The Agents then informed Mr. Ramnaraine that they needed to ask him some questions, and physically touched Mr. Ramnaraine; leading him into a separate classroom. Mr. Ramnaraine asked the University police officer whether he needed an attorney, to which the officer stated "you'll have to ask [the agents]. Mr. Ramnaraine asked the Agents if he needed any attorney and was told he was "not under arrest."

Once inside the room, the Agents physically blocked both exits.  Law enforcement then confronted Mr. Ramnaraine with his internet profile on "MySpace" and asked if Mr. Ramnaraine wanted to "confess" anything to the agents. When Mr. Ramnaraine initially denied any familiarity with child pornography the police confronted him with alleged evidence of his guilt, waiving a

4

CD[2] and stated "it's all right here [Mr. Ramnaraine]" "it would be best if [you] just tell the truth." Mr. Ramnaraine was detained for two hours and subjected to police questioning.

The totality of the circumstances makes clear that Mr. Ramnaraine was in custody and subject to interrogation, without the benefit of *Miranda*. First, he was physically touched and escorted to a separate and secluded room by two Agents and an armed University Police Officer. Once there, the Agents physically blocked the exits to the room, a clear indication that Mr. Ramnaraine could not leave. Further, the Agents confronted Mr. Ramnaraine with apparent evidence of his guilt, claiming that they "had it all" and just needed Mr. Ramnaraine to confirm the story.

Surely, being physically escorted into a separate and secluded room and thereafter being kept inside by an armed officer and two additional Agents blocking the exit would lead a reasonable person to believe that they were not free to go. Because Mr. Ramnaraine was subject to custodial interrogation without *Miranda*, any confession subsequently made should have been suppressed. Counsel was ineffective for failing to recognize the well-settled precedents which require *Miranda* warnings be administered prior to a custodial interrogation. His failure to file a motion to suppress on these grounds constitutes a clear departure from reasonably acceptable standards of competence and diligence.

Mr. Blanker was ineffective in failing to recognize that his client was interrogated in violation of *Miranda* and for failing to file a Motion to Suppress on that basis. But for counsel's ineffectiveness, Mr. Ramnaraine would not have pled guilty and would have proceeded to trial.

### b.  RAMNARAINE'S ALLEGED CONFESSION WAS INVOLUNTARY

---

[2] The CD did not have any incriminating evidence on it. In fact, later, during a search of Mr. Ramnaraine's computers the CD was discovered to contain forensic software to assist law enforcement in detecting deleted or archived images from a computer.

The standard for evaluating the voluntariness of a confession is whether a person made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him. *United States v. Badiki*, 2018 U.S. Dist. LEXIS 220595, *12 (N.D. Ga. Dec. 31, 2018). Voluntariness depends on the totality of the circumstances and must be evaluated on a case-by-case basis. *United States v. Rivera*, 372 Fed. Appx. 958, 963 (11th Cir. 2010). Further, the question of whether a confession is voluntary is not effected by whether a suspect is in custody or being interrogated. *Id.*

This totality of the circumstances test directs the Court to determine whether a defendant's statement was the product of an essentially free and unconstrained choice. *Badiki*, U.S. Dist. LEXIS 220595 at *24. *See also United States v. Garcia*, 890 F. 2d 355, 360 (11th Cir. 1989) (discussing voluntariness of a confession). In determining whether a confession was voluntary, the court should consider the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by the police. *Badiki*, U.S. Dist. LEXIS 220595 at *24.

Mr. Ramnaraine was only twenty years old and had never been in contact with any law enforcement agency.  He was scared and unfamiliar with the process of interrogation. Furthermore, Mr. Ramnaraine feared that his sexual orientation would be revealed if he did not comply with law enforcement, or tell them what they "wanted to hear".[3] The Agents threatened to search Mr.

---

[3] At the time of the interrogation, Mr. Ramnaraine was a young college student, who had not revealed his sexual orientation to classmates, friends, or his parents. Mr. Ramnaraine particularly feared what his parents, being conservative Christians, would think when and if he revealed his sexual orientation to them. Mr. Ramnaraine was terrified that his viewing of adult gay pornography (the act he truly engaged in) would be revealed to his parents if law enforcement threats to "go home" came to fruition.

Ramnaraine's home (where his parents resided) if he did not cooperate and that things would "go in [his] favor" if he was "honest."

What is more, Mr. Ramnaraine ultimately revealed his homosexuality to the Agents who used his sexuality and relationships against him during the interrogation. In that regard, the Agents insinuated that his significantly older boyfriend was likely cheating on him with a "young thing" back in Orlando (Mr. Ramnaraine's hometown). The Agents also made comments like "maybe he's the pedophile" when discussing Mr. Ramnaraine's boyfriend. The interrogation lasted two (2) hours and during the interrogation the Agents repeatedly asked Mr. Ramnaraine the same questions over and over again until he gave a "desired" response or admission. At the end of the questioning, the Agents told Mr. Ramnaraine they were coming back to his room to search his computer and he remained in custody that time.  In addition, the Agents threatened to obtain a search warrant and notify Mr. Ramnaraine's parents of his internet activities if he did not cooperate with them.

The totality of the circumstances make clear that the confession was not voluntarily made. In that respect, Mr. Ramnaraine was an inexperienced individual who was young and had never been in contact with law enforcement officers. The Agents used physical coercion by actually physically escorting Mr. Ramnaraine to a secluded room and thereafter physically blocking the exits in an effort to compel a confession. In addition, the Agents used deceptive tactics, false promises, and threatened that they would obtain a search warrant for his parents' home and "get them involved" if Mr. Ramnaraine refused to cooperate. They also showed Mr. Ramnaraine apparent evidence against him. However, in realty, the "evidence" was a deceptive ploy, and it was later shown that the CD had only forensic software that law enforcement would ultimately use to assist in a search of Mr. Ramnaraine's electronics. What is more, they informed him that things would go in his favor if he simply told the truth.

Once again, Defense Counsel was ineffective for failing to recognize that Mr. Ramnaraine's confession was involuntarily obtained and that viable grounds for the filing of a Motion to Suppress existed. Had counsel filed a motion to suppress, it is extremely likely the confession would have been suppressed. Without the confession, the Government's case would have been significantly weakened.  But for counsel's failure to file a Motion to Suppress, Mr. Ramnaraine would not have pled guilty and would have exercised his rights and proceeded to trial.

## 2.    RAMNARAINE'S CONSENT TO SEARCH WAS INVOLUNTARY

Mr. Ramnaraine also asserts that counsel was ineffective for failing to file a motion to suppress based on the fact that his consent to search was involuntary.  In order for consent to a search to be deemed voluntary, it must be the product of an essentially free an unconstrained choice. *United States v. Garcia*, 890 F. 2d 355, 360 (11th Cir. 1989).  In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents. *Id.*  Further, to determine whether consent is voluntary, the court should consider a number of relevant factors, including: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedure; (3) the extent and level of the defendants' cooperation with police; (4) the defendant's awareness of his right to refuse to consent to the search; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Holmes,* 270 Fed. Appx 767, 768 (11th Cir. 2008); *United States v. Brown*, 2006 U.S. Dis. LEXIS 45026, *8 (S. D. Ga. Jul. 3, 2006).[4]

---

[4] To begin with, any consent obtained by law enforcement after their unconstitutional interrogation was subject to suppression as fruit of the poisonous tree; even assuming its voluntariness. *See Wong Sun v. United States*, 371 U.S. 471 (1963) (explaining that evidence obtained by police after unlawful conduct is subject to suppression, although such evidence may have been independently admissible).

In this case, after being unconstitutionally interrogated by the police for two hours, Agents informed and instructed Mr. Ramnaraine that they would be taking him to his dorm room to look at his computer. This was not a request.  It was a command. In addition, Mr. Ramnaraine wanted to walk to his dorm and meet the Agents there, but was told he must ride with the agents in their unmarked vehicle.  Mr. Ramnaraine was then placed in the backseat of the police vehicle. Once inside, Mr. Ramnaraine realized the doors were locked and the windows would could not be rolled down and thus he could not voluntarily exit the vehicle. The Agents drove Mr. Ramnaraine to his dorm room and informed him that they *needed* him to sign "some paper work" and then they could "continue." Mr. Ramnaraine expressed his concern to the Agents, stating that he did not want them to *take* his computers away.

After Mr. Ramnaraine signed a consent form, the Agents walked him into his dorm and instructed Mr. Ramnaraine to open the door and give them access. The Agents then entered Mr. Ramnaraine's room without asking him for permission. Once inside, Mr. Ramnaraine was instructed to sit down on his bed while the Agents performed a search of his electronics. The search did not produce any child pornography. When a cursory search failed to show the presence of child pornography, a second search with the use of forensic software did not reveal the presence of any child pornography on the computer. Thereafter, the Agents discovered a memory card in the vicinity of the computer and connected it to the computer to see its contents. The card contained, apparently, two corrupt files of alleged child pornography. At this point, the Agents told Mr. Ramnaraine that they were physically taking the computer and various other electronics. Mr.

9

Ramnaraine objected, but the Agents told him that his "consent" included "taking" the items and that he had no choice.[5]

Considering the totality of the circumstances, it is clear that any consent to search was involuntary. First, Mr. Ramnaraine was detained by law enforcement officers and had been for at least two (2) hours prior to the signing of the consent form. Importantly, Mr. Ramnaraine had requested to leave and was told that he was required to remain with law enforcement. Further, Mr. Ramnaraine was transported in a police vehicle and the doors and windows were locked, preventing Mr. Ramnaraine from leaving. In addition, the Agents downplayed the importance of the consent, telling Mr. Ramnaraine that it was just "paperwork" that needed to be signed to move the process along.

Furthermore, the Agents did not inform Mr. Ramnaraine that he was free to decline consent. The circumstances in fact present a contrary implication – that Mr. Ramnaraine must consent or he would not be free to go. As previously stated, Mr. Ramnaraine was only twenty (20) years old and had no previous contact with law enforcement. Mr. Ramnaraine was locked in the back of a law enforcement vehicle when he was told he must sign paperwork to move the process along. Mr. Ramnaraine was unaware of what he was signing at the time that he executed the document. Accordingly, his consent to search was not knowing and voluntary.

Finally, upon realizing the implication of the consent form that he had executed, Mr. Ramnaraine objected to the search at numerous points. He repeatedly asked the Agents to leave, informed them that he did not want them to search, and strenuously objected to the physical

---

[5] It should also be noted here that, even assuming Mr. Ramnaraine's initial consent was valid, he had the right to withdraw that consent at any time. *See Mason v. Pulliam*, 557 F. 2d 426, 429 (5th Cir. 1977) (recognizing that a consent to search can be withdrawn or limited at any time). Mr. Ramnaraine effectively withdrew his consent by objecting to the taking of the equipment, however, law enforcement disregarded his withdraw of consent and took the objects.

removal of his electronics. Nevertheless, the Agents continued on in their investigative efforts without recognition of Mr. Ramnaraine's right to refuse consent, withdraw consent, or limit his consent at any time. *See* n. 4, *supra*.

Defense Counsel should have recognized that the circumstances surrounding Mr. Ramnaraine's consent to search clearly exhibited a situation where consent was not knowingly and voluntarily obtained. Defense Counsel should have accordingly filed a motion to suppress any and all evidence seized as a result of the unconstitutional search. Counsel's failure to do so constitutes objectively unreasonable representation. Given the involuntariness of Mr. Ramnaraine's consent to search, a Motion to Suppress the evidence seized would very likely have been granted, significantly weakening the Government's case. But for counsel's failure to file a Motion to Suppress the evidence illegally seized as a result of the search of his dorm, Mr. Ramnaraine would have insisted upon exercising his rights and proceeded to trial.

### 3. LAW ENFORCEMENT VIOLATED RAMNARAINE'S FOURTH AMENDMENT RIGHTS BY EXCEEDING THE SCOPE OF ANY VOLUNTARY CONSENT.

Regardless of whether Mr. Ramnaraine's consent to search was voluntary, law enforcement exceeded the scope of his consent by seizing a memory card (which was not expressly stated on the consent form) and also physically removing the electronics from his dorm room without his permission or consent.  When the basis for a search or seizure is consent, the government must conform to the limitations placed upon the right granted to search, seize or retain the papers or effects. *See Daleo v. McCray*, 213 U.S. Dist. LEXIS 73226, *11 (M.D. Fla. May 23, 2013). Thus, where a consent form is signed or the defendant verbally explains the scope of his consent given law enforcement must abide by that scope. *Id.* Otherwise, the scope of consent is limited by the citizens' right to withdraw his consent and reinvoke his Fourth Amendment rights. *Id.* at *11-12.

*See also United States v. Elliot*, 107 F. 3d 810, 815 (10th Cir. 1997) (The scope of a search is generally defined by its expressed object and is limited by the breadth of the consent given.).

In the instant case, Mr. Ramnaraine signed a consent form which specifically delineated the items in his dorm room which law enforcement officers were permitted to search. The form specifically states as follows:

> I SHELDON JOEL RAMNARAINE have been asked by Special Agents of the Federal Bureau of Investigations (FBI) to permit a complete search by the FBI or its designees of any and all computers, any electronics and/or optical data storage and/or retrieval system or medium and any related computer peripherals described below: (1) Dell laptop; (1) western digital external hard drive – 2 terrabyte; (1) western digital external hard drive – 750 gigabyte; (1) flash drive and located at Jennings Hall – University of Florida, dorm room 1112 which I own, possess, control and/or have access to for any evidence of a crime or other violation of the law. The required passwords, logins, and/or specific directions for computer entry are as follows: eR2cD*bC, I have been advised of my right to refuse to consent to this search and I give permission for this search, freely and voluntarily and not as the result of threats or promises of any kind. I authorize those Agents to take any evidence discovered during this search, together with the medium on which it is stored and any associated data, hardware, software or computer peripherals.

*See* Exhibit B, Consent to Search. This form limits the scope of consent and expressly provides the items that Mr. Ramnaraine gave consent to search. To begin with, the memory card (which ultimately revealed two apparent photographs containing child pornography, which is the only evidence of a crime found in Mr. Ramnaraine's dorm room) is not specifically listed on the consent to search form. The fact that the memory card is not mentioned on the consent form, and Mr. Ramnaraine did not give any additional verbal consent for a search thereof renders any search of the memory card impermissible and outside the scope of the consent to search.

Further, and in addition, the consent form specifically authorizes law enforcement to "take" only evidence discovered during the search. The search of the computer both with lay search and with forensic software produced no incriminating evidence. In fact, the only "evidence" obtained came from the memory card, discussed above. Because the consent to search provided for taking

property only when evidence of a crime had been discovered thereon, and no evidence of a crime was discovered on any of the computers seized by law enforcement, any evidence obtained from these devices after the fact was subject to suppression. Defense counsel's failure to file a motion to suppress on these grounds fell well below an objectively reasonable standard of competence. Mr. Ramnaraine was prejudiced by the failure to file the emotion to suppress because it would have effectively eliminated the Government's physical evidence against Mr. Ramnaraine. But for counsel's ineffectiveness, Mr. Ramnaraine would have insisted on exercising his rights and proceeded to trial.

### B.  COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MERIOTIORUS MOTION TO DISMISS BASED ON ENTRAPMENT

Mr. Ramnaraine asserts that counsel was ineffective for failing to file a motion to dismiss based on the defense of entrapment. Federal law recognizes a defense of entrapment. *See Sorrells v. United States*, 287 U.S. 435 (1932); *see also Sherman v. United States*, 356 U.S. 369, 372 (1958) (indicating the entrapment defense exists to prevent unwary innocent people from being enticed into the commission of a crime).   Such defense does not focus on the conduct of law enforcement, but instead considers whether Congress could have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense but was induced to commit them by the Government. *See United States v. Russell*, 411 U.S. 423 (1973) (emphasis added). A valid entrapment defense has two related elements: government inducement of the crime, and lack of predisposition on the part of the defendant to engage in criminal conduct. The defendant bears the burden of presenting credible evidence of government inducement. If the defendant sustains that burden, the prosecution must prove predisposition to commit the crime beyond a reasonable doubt. *United States v. Kpstein*, 759 F. 3d 168, 173 (2d Cir. 2014).

In addition, federal law recognizes a defense of entrapment by estoppel. *See United States v. Thompson*, 25 F. 3d 1558, 1561 (11th Cir. 1994).  Entrapment by estoppel is an affirmative defense, which unlike the defense of entrapment, focuses on the actions of government officials and not on the defendant's predisposition. *Id.* at n. 2. To successfully assert entrapment by estoppel, the defendant must show that an official told a defendant that certain conduct [was] legal and the defendant believed that official. *See United States v. Hedges*, 912 F. 2d 1397, 1405 (11th Cir. 1990). *See also Cox v. Louisiana*, 379 U.S. 559 (1965) (explaining that entrapment by estoppel occurs where the government informs the defendant that it can engage in the prohibited conduct and then attempts to prosecute that defendant for the same conduct); *Raley v. Ohio*, 360 U.S. 423 (1959) (indicating that the government cannot "make available" crime to a defendant and thereafter prosecute him without warning that the defendant's participation is criminal); *United States v. Hedges*, 912 F. 2d 1397 (11th Cir. 1990) (indicating that entrapment by estoppel applies when an official informs a defendant that conduct is legal and the defendant believes the official);

In the instant case, law enforcement solicited Mr. Ramnaraine on a lawful internet website. After making initial contact, law enforcement agents solicited Mr. Ramnaraine to download a peer-to-peer ("P2P") file sharing system. Once that system was downloaded, law enforcement reengaged Mr. Ramnaraine, inviting him to become a contact.

Thereafter, law enforcement actually sent and/or share child pornography with Mr. Ramnaraine. In soliciting Mr. Ramnaraine to download the P2P software, becoming his contact, and sharing illegal photographs with Mr. Ramnaraine the agents implicitly conveyed that the site, and the content thereon would be legal. Mr. Ramnaraine did not request child pornography and it came into his position through law enforcement without solicitation.

In addition, Mr. Ramnaraine has no prior criminal history and no predisposition to commit crime. Mr. Ramnaraine was a college student, on scholarship at University of Florida at the time that he made contact with law enforcement officers. Mr. Ramnaraine had never looked at child pornography and had no interest in meeting individuals who had access to the same. Nevertheless, law enforcement officers put child pornography on his computer and then arrested him for his possession of that same child pornography.

Mr. Ramnaraine was entitled to assert defenses of entrapment and entrapment by estoppel, and his counsel failed to assert these by way of motion to dismiss the indictment. Further, even assuming that the defenses were more appropriate for trial, Mr. Ramnaraine's trial counsel never informed him of the availability of these defenses. It is without question that a criminal defendant must be made aware of the defenses available to him in order to make a knowing and voluntary decision to accept a plea, or to entertain a plea. *See generally Sullivan v. Secretary of Fla. Dept. of Corr.*, 837 F. 3d 1196 (11th Cir. 2016) (indicating that counsel was ineffective for informing his client that he had a defense which was not recognizable at the time of the offense and where defendant went to trial as a result of that representation); *Holmes v. United States*, 876 F. 2d, 1545 1550-51 (11th Cir. 1989) (finding counsel ineffective where counsel gave misleading advice to the defendant, which advice resulted in the defendant pleading guilty).

Mr. Ramnaraine was not advised that he had a possible defense of entrapment or entrapment by estoppel at the time that he pled to the charges in this case. Counsel was ineffective for failing to assert, or at the very least advise, Mr. Ramnaraine of the entrapment defenses, so he could make an informed decision before accepting a plea. Had he been made aware of these viable defenses Mr. Ramnaraine would not have accepted a plea and would have proceeded to trial.

### C. COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND/OR HIRE AN EXPERT.

Mr. Ramnaraine asserts that counsel was ineffective for failing to adequately investigate the circumstances surrounding the ultimate search of Mr. Ramnaraine's computer and the child pornography allegedly found in his possession.  In general, defense counsel renders ineffective assistance when it fails to investigate adequately the sole strategy for a defense or to prepare evidence to support that defense. *Foretenberry v. Haley*, 297 F. 3d 1213, 1226 (11th Cir. 2002). The duty to investigate requires that counsel conduct a substantial investigation into any of his client's plausible lines of defense. *Id. See also House v. Balkcom*, 725 F. 2d 608, 617-18 (11th Cir. 1984) (when a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer failed to render effective assistance of counsel.).

While courts do not require that a lawyer be a private investigator in order to discern every possible avenue which may hurt or help the client, the court does require that the lawyer make an effort to investigate the obvious."[6] *House*, 725 F. 2d at 618. In fact, pretrial investigation, principally because it provides a basis upon which most of the defense case must rest, is, perhaps, the most critical stage of a lawyer's preparation. *Id.* In this regard, the Eleventh Circuit has enunciated the rule that effective representation, consistent with the Sixth Amendment, also involves the 'independent duty to investigate and prepare.' *Id. See also Weidner v. Wainwrite*, 708 F. 2d 614, 616 (11th Cir. 1983) (stating that defense counsel has an independent duty to investigate and prepare).

---

[6] "Specifically, [the Eleventh Circuit] has held assistance ineffective when counsel ignored 'red flags' that any reasonable attorney would have perceived to demand further investigation.'". *Fortenberry*, 297 F. 3d at 1227.

Further, Counsel's duty to investigate applies even when a defendant tells his attorney that he wishes to plead guilty. *Foretenberry*, 297 F. 3d at 1226-27. In such cases, defense counsel must still make an independent examination of the facts and circumstances of the case. *Id. See also Agan v. Singletary*, 12 F. 3d 1012, 1018 (11th Cir. 1994) (finding defense counsel ineffective where it failed to investigate, despite the fact that defendant pled guilty). Finally, counsel may be found ineffective where he or she fails to enlist the assistance of an expert without any investigation into whether such action would be beneficial to the case. *See Pavel v. Hollins*, 261 F. 3d 201, 223 (2d Cir. 2001). *See also United States v. Tucker*, 716 F. 2d 576, 581 (9th Cir. 1983) (finding in a complex fraud case, it should have been "obvious to a competent lawyer that the assistance of an accountant [was] necessary."); *Knott v. Malbry*, 671 F. 2d 1208, 1212 (8th Cir. 1982) (noting that counsel is ineffective where it fails to consult with an expert in a case where counsel is not sufficiently "versed in a technical subject matter").

In the instant case, defense counsel both failed to investigate and/or hire an investigator to assist in said investigation. More specifically, defense counsel failed to investigate the circumstances surrounding Mr. Ramnaraine's apparent download of child pornography. Mr. Ramnaraine first gained access to Gigatribe[7] when an unknown individual solicited him to download the software in a lawful men's chatroom. Mr. Ramnaraine maintains that this individual was an undercover law enforcement officer. This individual not only induced Mr. Ramnaraine to download the file sharing software, where he ultimately obtained child pornography, but also

---

[7] Gigatribe is a French private peer-to-peer ("P2P") file sharing program. To use this program the user must download software to his or her computer. Once the software has been downloaded, the user is required to create a username and password. Importantly, a user cannot simply "search" the software for images or videos. Instead, a user can only "share" folders, files, pictures, movies, or other data with individuals who have become "contacts" of the user. A user obtains "contacts" by accepting their invitations. A user on Gigatribe cannot see any of the files, folders, videos, pictures or other data of any other user unless those two users have accepted an invite from each other.

shared those child pornography images with Mr. Ramnaraine. If Mr. Ramnaraine is correct, and the undercover is the individual who actually gave Mr. Ramnaraine criminal images; Mr. Ramnaraine's entrapment defense would be a complete defense to the charges.

In addition, the CPS reports provided by the Government don't make sense, when viewed by a computer technology expert. According to such an authority, the CPS indicating that "0 networks joined" yet "1 file shared" "doesn't make sense." Further, in addition to the inconsistencies in the reports themselves, the report is missing information. The report should include: (1) where the child pornography was allegedly found; (2) a "full" report; (3) what content was in the Gigatribe shared folder; (4) whether there was search history. The forensic expert consulted by Mr. Ramnaraine for the purposes of the instant motion indicated that, essentially, "everything" is missing from the CPS report.[8]

The assistance of an expert witness, well versed in P2P file sharing was absolutely necessary to aid in the investigation of possible Constitutional issues, due process concerns, defenses, and trial strategy. However, defense counsel failed to investigate any of the areas mentioned above, nor commission an expert to aid in understanding the file sharing system which precipitated the charges in this case. This failure caused undeniable prejudice to Mr. Ramnaraine, because the Government's entire case rested on possession of child pornography images which were allegedly collected from Mr. Ramnaraine's electronic devices. Had an expert been

---

[8] The expert indicated that he would like to see the following, in a typical CPS report (based on his training and experience): (a) The EnCase or FTK E01 image creation log, that says the disk serial number and number of sectors and if there were any errors in creating the image; and (b) the EnCase report in full, with all hash or SHA-1 values and bookmarked evidence, especially regarding Gigatribe, chats, downloads, timestamps, and any mention of IP addresses, the Gigatribe configuration like what was the username, and who were Mr. Ramnaraine's contacts, with the thumbnails redacted from the PDF where they contained CP, and photos of the evidence documenting each step.

commissioned, his or her expertise would have shown that the reports at issue were incomplete at best. Further, the expert would have been able to raise constitutional concerns surrounding *how* the images at issue came to be on Mr. Ramnaraine's computer and have been able to challenge whether all of the images actually depicted minors.[9]  The opinion of such an expert would have greatly impacted Mr. Ramnaraine's understanding of the evidence against him and assisted him in deciding whether to plead guilty or proceed to trial.  Further, the testimony of such an expert at a motion to suppress, trial, and sentencing was critical.

### D.  RAMNARAINE'S PLEA WAS NOT KNOWING AND VOLUNTARY

Mr. Ramnaraine asserts that counsel failed to adequately advise him about the consequences of his plea and/or all possible defenses available to him prior to his plea and that this failure rendered any plea involuntary.  A plea of guilty, like all waivers of constitutional rights, must be voluntary and intelligent. *See Arrekjold v. United States*, 707 F. Supp. 2d 1332, 1340 (S.D. Fla. 2010). Further, a plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense. *Johnson v. United States*, 2017 U.S. Dist. LEXIS 114147 (S.D. Fla. Jul. 20, 2017). To enter a voluntary plea, the defendant must understand the law in relation to the facts.

---

[9] The chats which ultimately produced child pornography were between Mr. Ramnaraine and user "DALLEN2017". Based on reports and copies of such conversations, it appears that DALLEN2017 is the party who actually shared the child pornography onto Mr. Ramnaraine's computer using Gigatribe. The report states that it was Mr. Ramnaraine who asked DALLEN2017 for "pics". In response DALLEN2017 added those pictures, which were password protected and gave Mr. Ramnaraine the password for access. DALLEN2017 is the username of Detective Ramos (it does not appear that law enforcement ever obtained a subpoena for any records of Gigatribe or other chatrooms and as such the only method to access the conversations between Mr. Ramnaraine and any user, would be if law enforcement was actually a party to those conversations). *See* DE72:7. This situation is troubling. Law enforcement provides the child pornography images and videos to Mr. Ramnaraine and then uses that child pornography to elicit a confession and/or to prosecute Mr. Ramnaraine for possession and distribution of child pornography. Had this avenue been explored Mr. Ramnaraine's potential entrapment defense would have been almost certain to prevail against the charges.

*Jean-Baptiste v. United States*, 2011 U.S. Dist. LEXIS 10905 (S.D. Fla. Jan. 13, 2011), *see also McCarthy v. United States*, 394 U.S. 459 (1969) (explaining the definition of voluntary in the context of a plea).

More specifically, the defendant must receive real notice of the charge against him and understand the nature of the constitutional protections he is waiving. *Johnson*, 2017 U.S. Dist. LEXIS 114147 at *25. For a plea to be knowing and voluntary (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *Id.* The ultimate standard for determining the validity of a guilty plea is 'whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant.' *Id.*

The court taking the plea must address the defendant personally in open court before accepting the plea and determine the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement). *Jean-Baptiste*, 2011 U.S. Dist. LEXIS 10905 at *7. Although a defendant's statements during this plea colloquy are entitled to a "strong presumption of verity" they are not dispositive of defendant's claims. *See Blackedge v. Allison*, 431 U.S 63, 74 (1977) (The barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable).

In the instant case, Mr. Ramnaraine's plea was not knowing and voluntary for a number of reasons. First and foremost, his counsel failed to adequately explain the nature of the rights which Mr. Ramnaraine was giving up in entering a plea. Although Mr. Ramnaraine understood that he was pleading to the charges against him, Mr. Ramnaraine believed that he was still able to go to trial. More specifically, counsel advised Mr. Ramnaraine that entering a guilty plea was a mere "formality" of the judicial process. At the same time, counsel also advised Mr. Ramnaraine that

he had engaged a psychologist to testify at trial on Mr. Ramnaraine's behalf; further leading Mr. Ramnaraine to believe that he could plead guilty while still pursuing a trial.

In addition to this misrepresentation, counsel informed Mr. Ramnaraine that filing a motion to suppress would cause Mr. Ramnaraine to lose "cooperation points" with the Government. According to counsel, this fact absolutely barred the possibility of filing a motion to suppress in the cause. Further, defense counsel failed to inform Mr. Ramnaraine of possible meritorious defenses to the government's allegations. *See* Sec. IV, *infra*.

Had counsel adequately advised Mr. Ramnaraine that by entering a plea, he was terminating his case and forever foreclosing the opportunity to proceed to trial, Mr. Ramnaraine would have never entered into a plea bargain. In addition, had Mr. Ramnaraine been adequately advised with respect to the legal merit of his motion to suppress and defense of entrapment, Mr. Ramnaraine would have elected to proceed with his case, rather than enter into a plea bargain. Instead, believing based on counsel's advice that entering a plea was *part* of the trial process, Mr. Ramnaraine entered into an unknowing and involuntary plea.

### E.   INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

Mr. Ramnaraine asserts that counsel was ineffective during the sentencing phase of the case for failing to file written objections to the Presentence Investigation Report, failing to object to the factual proffer and failing make legal arguments to support the objections at the sentencing hearing.

Counsel commits ineffective assistance of counsel if he or she fails to object to the PSI, where an objection would have been sustained or likely meritorious. *See Sanders v. United States*, 2017 U.S. Dist. LEXIS 175435 (S.D. Fla. 2017) (discussing ineffective assistance of counsel claims with respect to PSI objections).

2.  ¶ 26 OF THE PSI - DISTRIBUTION FOR THE RECEIPT OR EXPECTION OF RECEIPT OF THING OF VALUE BUT NOT FOR PECUNIARY GAIN PURSUANT TO USSG§ 2G2.2(b)(3)(B)

Counsel failed to effectively object to an enhancement under USSG § 2G2.2(b)(3)(B). This guideline specifically provides that the defendant should receive a sentencing enhancement if he or she "distributed *in exchange for any valuable consideration, but not for pecuniary gain*" child pornography. *See* 18 U.S.C. § 2G2.2(b)(3)(B) (2019). To impose this enhancement the Government must prove that the defendant "expected" rather than "just hoped" to receive a thing of value. *See United States v. Maneri*, 353 F. 3d 165, 168-69 (2d Cir. 2003).  Although pecuniary gain is broadly defined, there must be proof that establishes a value gained. *See e.g., United States v. Black*, 116 F. 3d 198, 202=03 (7th Cir. 1997) (noting that although pecuniary gain is broadly defined it requires at least a barter, swap, or some other consideration); *United States v. Muick*, 167 F. 3d 1162, 1166 (7th Cir. 1999) (indicating that bartering the child pornography in order to receive other computer files was sufficient, although not monetary gain).   In the context of file-sharing programs, "the mere use of [such] a program ... does not, by itself, establish a transaction" that will support the enhancement. *United States v. Spriggs*, 666 F.3d 1284, 1288 (11th Cir. 2012). Instead, the evidence must show that the defendant's sharing of child pornography with other users was conditioned on something in return, such as a return promise to share. *Id.*

In the instant case, there is no evidence that Mr. Ramnaraine received anything of value or distributed child pornography for pecuniary gain. Further, even taking the broadest reading of the statute (to include any transmission, or distribution) Mr. Ramnaraine's conduct does not fit the bill for the enhancement. Mr. Ramnaraine's sole purpose for using Gigatribe was to trade gay pornography, not images of children.  He vehemently denies ever intentionally sharing child

pornography, and instead asserts that any such items were shared with him by other users in his network and never "reshared."

The application of this enhancement was challenged on appeal to the Eleventh Circuit, which held the district court did not err in applying the enhancement. *United States v. Ramnaraine*, 730 Fed.Appx. 749, 751 (11th Cir. 2018). The Court noted that although Mr. Blanker objected to the enhancements under Guideline § 2G2.2(b)(3)(B) and (b)(7)(D) at sentencing, "he did not make any legal argument to the district court about why these enhancements should not apply." *Id.* As a result the higher standard of plain error was applied. *Id.* The Court further noted that because Mr. Blankner stipulated to the government's factual proffer, "we can rely on the proffer to determine whether the district court plainly erred in applying these enhancements." *Id.* **The Court reasoned Mr. Blankner on behalf of** "Ramnaraine made a general objection to these enhancements at his sentencing, but admitted that 'if the United States Attorney called the FBI witness to testify,' the district court would have no "legal basis" to reject the enhancements. He also did not dispute the facts in the PSR." *Id.* at 750. The Court found that sufficient evidence that Mr. Ramnaraine conditioned his sharing of child pornography on a return promise to share because the PSR stated that Mr. Ramnaraine used Gigatribe, a file-sharing program and at sentencing, the government proffered that Mr. Ramnaraine admitted in his interviews with law enforcement that he used Gigatribe in order to trade child pornography. The government also described a chat recovered from Ramnaraine's computer in which Ramnaraine told another user, "[E]ither you share or I will ban you."

It was ineffective for defense counsel to stipulate to the Government's factual proffer, not to object to the facts as contained in the PSI, and to fail to assert that Mr. Ramnaraine was using Gigatribe for the purpose of trading gay pornography, not images of children. The Eleventh Circuit

opinion clearly evidence the prejudice suffered by Mr. Ramnaraine as a result of counsel's ineffectiveness.

### 3. COUNSEL FAILED TO ANALYZE THE MATERIALS TO ENSURE THEY MET THE DEFINITION OF "CHILD"

Mr. Ramnaraine asserts that counsel was ineffective for failing to analyze the images at issue to determine whether an enhancement under USGG § 2G2.2(b)(2) was warranted. This section provides for an enhancement where the images involved a minor who had not yet attained the age of twelve. *Id.* The Government bears the burden of proving this enhancement by a preponderance of the evidence. *See United States v. Taylor*, 2018 U.S. Dist. LEXIS 138556 (E.D. Tenn. Aug. 16, 2018) (noting that the Government must prove the age of the individuals depicted in child pornography by a preponderance of the evidence when seeking an enhancement under 18 U.S.C. § 2G2.2(b)(2)).

Counsel should have retained the services of an expert witness to evaluate the images. Furthermore, counsel should have made objections to the facts contained in the PSI, not stipulated to the government's factual proffer, and forced the Government to prove the number of qualifying images in order to effectively challenge this enhancement.  But for counsel's ineffectiveness, Mr. Ramnaraine would likely not have received this enhancement.

### 4. CRIME INVOLVED 600 OR MORE IMAGES

Counsel was ineffective for failing to object to an enhancement under USSG § 2G2.2(b)(7)(D). This enhancement provides that where a defendant possesses 600 or more images, the Government may enhance the guideline score by five levels. *Id.* In the PSI, the Government contends that they saw "390 pictures and 3 videos" being shared by Mr. Ramnaraine during their investigation. However, the allegation merely asserts that these images were viewed, but not downloaded by the agent. *See* PSI ¶ 9. However, the Government appears to have included these

images in addition to the 210 images and 4 videos that were actually found on a storage device in Mr. Ramnaraine's dorm room.  It is unknown whether any of these images are duplicative.  Also in failing to have an expert evaluate whether the images depicted minors, it is unknown how many of the images actually qualified as child pornography.

The Government could not prove "possession" of the first 390 videos by a preponderance of the evidence as none of these videos were actually downloaded from Mr. Ramnaraine and were only merely "accessible" to him by his mere connection with other users. Accordingly, Mr. Ramnaraine should only have been given an enhancement based on the 210 images he actually possessed on the storage device. Counsel was ineffective for failing to raise this objection, which would have been sustained. As a result, Mr. Ramnaraine was prejudiced.

WHEREFORE, Mr. Ramnaraine respectfully requests that this Honorable Court grant this Motion to Vacate pursuant to 28 U.S.C. § 2255.  Mr. Ramnaraine requests a hearing on the instant motion.

Respectfully submitted,

 *s/ Courtney Montiero*
COURTNEY MONTIERO, ESQ.
Attorney for Petitioner
2847 Hollywood Blvd.
Hollywood, FL 33020
Phone: (954) 947-2848
Fax:  (954) 272-7657
courtney@montierolaw.com

### CERTIFICATE OF SERVICE

I HEREBY certify that on   October 1, 2019, the foregoing document was filed electronically with the Clerk of the Court using CM/ECF and thereby served on all counsel of record.

 *s/ Courtney Montiero*
COURTNEY MONTIERO, ESQ.