# GENERAL AFFIDAVIT

STATE OF FLORIDA
COUNTY OF NASSAU

MAY 11, 2020

Personally came and appeared before me, the undersigned Notary, the within-named Thomas Pullen, who is a resident of Nassau County, State of Florida, and makes this his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his knowledge:

**Qualifications and Experience:**

I am a state and federal court-certified computer and mobile forensic analyst with over 23 years' experience advising executives, law firms, small businesses, corporations and government agencies on network security and computer and mobile forensics.

Since 1996, I have worked in the field of information technology in various capacities. In 2004 I received a J.D. from the University of Miami School of Law. Since 2011, I have worked as a computer forensic analyst on over 100 state and federal cases and investigations, mainly federal criminal cases.

I have received training and education in computer forensic analysis from Guidance Software, Magnet Forensics, Cellebrite, and other forensic software companies.

As a computer forensic analyst, I have worked with law enforcement agents from the FBI, Secret Service, DEA, Homeland Security, ATF, United States Coast Guard, FDLE, and other state and local law enforcement agencies.

I have worked on federal criminal cases in the United States District Court for the Middle District of Florida, including a case where I was authorized to provide services to the Middle District of Florida as a computer forensic expert by Judge John E. Steele through the CJA program (USA v Kenneth Jackson).

I have been certified as an expert in computer and mobile forensics by United States District Courts for the Southern District of Florida Judges Cecilia Altonaga, James Cohn and Donald Middlebrooks, and in state court by Florida Circuit Court Judge Antonio E. Marin, prior to giving testimony as an expert witness in open court.

**USA v. Sheldon Joel Ramnaraine, No. 6:2011cr00356 (11th Cir. 2011)**

**Summary:**
For the above-styled case, I reviewed a document titled "(2019) Appendix of Evidence.pdf" prepared by Sheldon Joel Ramnaraine, a document titled "Presentence Investigation Report.pdf" prepared by United States Probation Officer Angela Harris-Butler for the Honorable Charlene Honeywell, District Judge, United States District Court for the Middle District of Florida, and researched the case in PACER and consulted the docket, reading the indictment and noting the docket text for the 98 entries.

This type of child pornography (CP) case, specifically, originating from CP file-sharing, now commonly called child abuse material (CAM) or a child exploitation case, has 2 phases. The first phase is an investigation that is done remotely. This simply involves reading reports generated by law enforcement, as there is no physical contact with a suspect yet. Files are downloaded from a file-sharing network, an IP address of a suspect is obtained, the ISP records are subpoenaed to get a physical address from the IP address by looking up the subscriber information, a search warrant is obtained by showing a judge the details of the investigation and specifying what files have been downloaded, the search warrant is served on the residence and any electronic devices found there are searched for evidence. This begins the second phase, the forensic reports that come from the seized equipment. Usually, the entire purpose of the first phase is simply to obtain a search warrant, and only CP found onsite is charged. Sometimes, CP that was remotely downloaded and not found onsite is charged anyway, but this is more complicated as it can be difficult to prove who was at a computer at a certain time, that they knew about the CP and intended to search it out, etc.

If I had been retained as an expert witness in computer forensics in this case, I would have first advised Sheldon Ramnaraine's attorney that it was critical to go onsite to the law enforcement agency where Mr. Ramnaraine's Dell laptop, SanDisk flash drive and Trancend memory card were being held, and process them in forensics software like EnCase, IEF, or FTK to better understand the evidence. I have done this several dozen times at various agencies. The law enforcement agency always provides copies of the discovery, which generally comes in an E01 disk image format, easily analyzed by any forensic software. This would have let Mr. Ramnaraine know exactly what evidence was physically found on his devices. I would have counted images and videos in question, noting if there were evidence that they had been viewed, and other key facts which would be needed to make decisions in the case, like the decision to accept a plea agreement or request a trial. Processing the evidence myself would have let me compare my results with those of law enforcement, and we could have highlighted any differences between the two sets of reports, which would have raised important questions, or pointed out similarities, which would have resolved important doubts.

A key part of analyzing evidence in child pornography cases involves counting images and videos. Here, there are many different numbers mentioned in different reports by law enforcement, but no reports that mention specifically how those numbers were arrived at. I would have clarified exactly how many child pornography images and videos were involved, if any, and reported exactly where they were found, how they got there, and what methods were

used to determine they were illegal child pornography and not legal child erotica, which is often a grey area and difficult to determine.

For example, I have seen sophisticated forensics software like Griffeye Analyze, which is used by most federal agencies in the United States, give incorrect numbers in child pornography cases. Most recently, in a case at Homeland Security in West Palm Beach, I saw Griffeye used to count sets of photos. Each photo set contained roughly 50 photos of minors in different scenes, like at the beach. The photo set started out with normal, legal photos and got progressively sexual over time, in such a way that only the last 2 photos were child abuse material. There were about 3 different photo sets in this case, having a total of about 6 images of child abuse material; 2 from each photo set. However, the software automatically just counted every image found in the directory, and so the HSI agent wrote up a report referencing 150 child-pornography images. In reality, the majority of images were legal, starting out as regular photos and drifting from child erotica to child pornography.

It's very easy to let the software decide automatically how many CP images are involved, or just count every single file in a download directory and write up a report. However, it's not truthful or accurate. This is why, since the number of files can add or subtract years of time spent incarcerated for a defendant, it's important to get it right and verify exactly how the numbers were calculated.

I also would have asked for full reports from all law enforcement agents and helped the attorney for Mr. Ramnaraine to understand their strengths and weaknesses. Detective Ramos created reports about his investigation and how he downloaded CP files from an IP address, Forensic Computer Analyst Debra Healy created reports about her forensic examination of 3 devices, and since the evidence is technical it generally requires a computer forensic expert to correctly interpret the reports, to know what they mean and to know when they are missing important information or contain mistakes.

Although Mr. Ramnaraine was charged with possession and distribution of child pornography, the materials that I reviewed show evidence of neither. From what I reviewed, this appears to be a case whose prosecution depended on granting consent to search, a confession and acceptance of a plea agreement, because there isn't much actual computer forensic evidence that could have been used at trial. However, I cannot tell if that's because I haven't received all the pertinent discovery, or if the discovery itself is simply lacking inculpatory evidence.

For example, the PSI report states "a forensic computer examiner examined Ramnaraine's storage device. The examiner found about 210 images and 4 videos depicting the sexual exploitation and abuse of prepubescent children." The discovery shows that the FBI seized 3 items: a Dell laptop, a SanDisk flash drive, and a Trancent memory card. Which device is meant by "storage device" above? And where is the report that found 210 images and 4 videos? There is a report from Debra Healy titled "Computer Forensic Examination Report" included in the "Appendix of Evidence" file, but this report simply contains links to other reports that were not included. The main body of the "Computer Forensic Examination Report" does not even say whether or not child pornography was found on any of the 3 devices examined. One would need to review all the links in the report to see what was found. Some links appear on the left-hand

4

side of the report which presumably include the images themselves and could not be distributed, and on the right-hand side of the report as text-only versions, which could be shared with third-parties. However, not even the text-only reports were included, so we don't know what evidence was found on any of the 3 devices. This is a vitally important piece of information and it's missing entirely.

See screenshot of report below:

### EXAMINATION OF EVIDENCE & RESULTS

Special Agent Rod Hyre of the Federal Bureau of Investigation requested that an examination of the above listed media be conducted for any digital data which may pertain to the possession, downloading, production, distribution or sharing of child pornography. During the examination, I used EnCase v6.18 and Access Data's Registry Viewer to examine the media submitted/seized.

The operating system and time zone setting was obtained. Click here to view these reports.

The user account that contained all evidentiary material was "Joel". AccessData's registry viewer was utilized to obtain information regarding this user account in the computers registry. To view this report click here.

A search was conducted for any graphics or movie files considered of notable value. The following files were bookmarked as notable.

| Notable Graphic Files | Notable Graphic Files Text Only |
|---|---|
| Notable Graphics from Unallocated | Unallocated Text Only |
| Notable Movie Files | Notable Movie Files Text Only |

5

**Detective Charles Ramos**

Chronologically, the case began with an investigation conducted by Detective Charles Ramos of the Boynton Beach Police Department. Detective Ramos stated in an "Officer Report" submitted to the Office of the State Attorney on December 29, 2010 that he was investigating the Peer-to-Peer software program Gigatribe on December 21, 2010, and downloaded "450 image files and 7 video files" from "a contact by the name of daddysboi1991" and states that "those files include child pornography images." He states that "these images and video files were of children under the age of 12 being sexually abused." The files were downloaded from the IP address 24.110.44.237. In the conclusion to his report, Detective Ramos states that "the downloaded files included numerous child pornography images/video."

What was left out of the report was essential information and specific details.

For example, was Detective Ramos using a specially made law enforcement edition of Gigatribe, similar to well-known law enforcement software RoundUp or Torrential Downpour? The law-enforcement versions of peer-to-peer software are usually forensically validated and help ensure that files cannot come from more than one source, and have log files that can be introduced as evidence in Discovery showing exactly who did what during the file download, show file hash values, show percentage of download to clarify when files have been partially downloaded, and have other features to help ensure that mistakes are not made in a prosecution. Was Detective Ramos just using a publicly-available Gigatribe software program, and if so, how could he be certain where files in his Download folder came from, and where is the log file or at least screenshots documenting his investigation?

How is it that "daddysboi1991" came to be a contact of Detective Ramos? How many other contacts did he have in Gigatribe? How can he be certain that the downloaded files came from a particular contact and not from another?

Also, what does it mean to say that the 450 images files "include" child pornography or that there are "numerous" child pornography images? Exactly how many CP files were downloaded? How did Detective Ramos determine that the files were child pornography? Did he just look at the file names only, did he use a hash database like those provided by NIST or Project VIC to match file hash values with known CP files, or did he view the contents?

When Detective Ramos states that "these images and video files were of children under the age of 12 being sexually abused," does he mean all 450 images and 7 videos? Apparently, he does not, because elsewhere he just says that they "include" child pornography, and elsewhere he says that there are "numerous" child pornography files. We do not know how many files there are, or how he determined that they were child pornography, or how he determined that they specifically involved children under the age of 12.

Furthermore, what we have is simply a vague description of an investigation, but no report of the investigation itself. Detective Ramos describes using Gigatribe, but there are no screenshots, no Gigatribe log files, no packet capture or network analyzer logs; there is no evidence to

6

substantiate the investigation in any way. Reference is made to some of these details being preserved in an "investigative package" but this was not actually included in the discovery.

Taken in its entirety, this "Officer Report" seems like something that might have been used to try to obtain a search warrant from a court, but it doesn't seem that this was done. Even so, a court would hopefully have required some minimum level of detail. For example, what files were downloaded that depicted sexual abuse of a minor? What are the file names, what are the file hash values, what date/time were they downloaded, did anyone in law enforcement view the contents to verify them, do these files appear in any law enforcement databases of known child abuse material (CAM), what IP address did they come from, was Gigatribe subpoenaed for the user account information?

Also, Detective Ramos appears to have given this user files over Gigatribe on December 20th, as per a chat log, which is the day before Detective Ramos turned around and downloaded files from the same user which he then wrote up in his Officer Report. It's unusual for law enforcement to distribute photos or videos to others in a CP case, and it's disconcerting that there does not seem to be any log of what these files were. Is it possible that Detective Ramos accidentally shared CP files with others including this user? The Officer Report says that Detective Ramos downloaded CP files from others to his own Downloads folder, so it's not a trivial question to ask if these photos he shared with others may have contained CP by mistake, since they were present on the law enforcement computer. See screenshot of chat, that was included in the "Appendix of Evidence" file:

```
Daddysboi1991 (20/12 13:50) > hi
Daddysboi1991 (20/12 13:50) > pass??
Dallen2017 (20/12 13:50) > dra777
Daddysboi1991 (20/12 13:50) > thanks
Daddysboi1991 has requested a recommendation. Would you like to recommend him?
Daddysboi1991 (20/12 13:53) > do you have pics
Daddysboi1991 (20/12 13:53) > ?
Dallen2017 (20/12 13:53) > in new folder
Dallen2017 (20/12 13:53) > i add now
Dallen2017 (20/12 13:54) > b or g
Daddysboi1991 (20/12 13:54) > ok
Daddysboi1991 (20/12 13:54) > b
Dallen2017 (20/12 13:54) > nice
Daddysboi1991 has requested a recommendation. Would you like to recommend him?
Daddysboi1991 (21/12 15:11) > hey, are u going to share anymore boys pic/vids?
```

Lastly, all we know at this point in time is that Detective Ramos is asserting that CP files were downloaded from a computer that had 24.110.44.237 as its IP address. There is nothing yet here that points to a specific person or computer, just a location which would be later identified as the Ramnaraine residence. This is not yet evidence that directly implicates Sheldon Ramnaraine.

7

**Angela Harris-Butler**

In the PSI report, probations officer Angela Harris-Butler says that Detective Ramos downloaded "about 390 photos and 3 videos of child pornography," but the detective himself did not provide a specific number in his Officer Report. Is there another report that was provided, and if so, where is it? Of these photos and videos, only 3 are detailed, and 1 of those either came from a different IP address or there is a typo in the PSI report in the IP address source field, because it lists 2 of the files as coming from 24.110.44.237 and 1 file coming from 24.110.44.137. This is a concern, because computer programs that generate log files do not make typos. This suggests that this entire table was manually created and was not the product of forensic software. If it were manually created, and there is already a mistake in the report even though there are only 3 examples given, could there be other mistakes? Is it possible that these 3 files came from another user, or from a different case altogether? Could the date or time be wrong? This is clearly a table that was typed up manually and not checked for errors.

Further, it contains language that is nonsensical. "Some of the images that Ramnaraine posted on his accounts were the following" doesn't accurately describe how Gigatribe works. Images are uploaded or downloaded, not posted. Were these images uploaded to Ramnaraine, or downloaded from Ramnaraine? It's not clear. "On his accounts" doesn't seem to make sense in this context and it's not clear what it means.

Also, the sentence "the agent downloaded about 390 pictures and 3 videos of child pornography" is unclear. We don't know exactly what "about 390" means. Does it mean 300? 350? 100? What criteria was used come up with this number, and to determine what was or was not child pornography? Is there a list somewhere of 390 pictures, with SHA-1 or MD5 hash values that match each file to a file known to law enforcement to contain child pornography? How many of these 390 pictures were not actually child pornography but were instead child erotica, or just legal photos that came in the beginning of a photo set? Was the number 390 arrived at using any software program like Magnet Forensics IEF which can calculate skin tone percentage and guess at what might be sexual in nature, or was it carefully verified photo by photo by a person?

8

9. The agent queried his network of friends and saw that user "daddysboi1991", later identified as Sheldon Joel Ramnaraine, was logged into the network. The agent browsed Ramnaraine directories and saw that he was sharing pictures and videos of child pornography. The agent downloaded about 390 pictures and 3 videos of child

May 1, 2012                                                4

RE: Ramnaraine, Sheldon Joel

pornography from Ramnaraine. Some of the images that Ramnaraine posted on his accounts were the following:

| DOWNLOADED FILES | DATE/TIME | CONTRIBUTING IP ADDRESS | DESCRIPTION |
|---|---|---|---|
| !2 boyz.jpg | 12/21/2010 3:06 PM EST | 24.110.44.237 | A color photo of two prepubescent boys both nude as one boy is shown touching the penis of the other boy |
| ! Boy 8 ! y suck dad (1).jpg | 12/21/2010 3:06 PM EST | 24.110.44.137 | A black and white photo of a pre-pubescent boy subjected to oral penetration by the penis of an adult male |
| Little Boys 5 Yo 0000004.jpg | 12/21/2010 3:06 PM EST | 24.110.44.237 | A color photograph of a prepubescent boy subjected to oral penetration by the penis of another young boy |

The PSI report also contains the following sentence: "A forensic computer examiner examined Ramnaraine's storage device. The examiner found about 210 images and 4 videos depicting the sexual exploitation and abuse of prepubescent children."

Presumably, this is a reference to Investigator Debra Healy's report. In the main body of her report, she does not say that CP was found on any device, let alone count images or videos. However, assuming this is correct, what does "about 210 images and 4 videos" mean? The word "about" tells me that they are not being very strict about counting, but exactly how accurate then are these numbers? Could it be 150 images and 3 videos? Also, we have the same issue as above in that we don't know how the numbers were calculated, we don't know how it was determined that the images and videos depicted "the sexual exploitation and abuse of prepubescent children," we don't know if all the images and videos contained prepubescent children or just a few did. Also, we don't know if these images or videos were viewed by Mr. Ramnaraine, if he

9

knew that they were there, if he downloaded them by accident because he downloaded hundreds of files from other users without specifically looking for CP, or similar.

Also important, we don't know if these "about 210 images and 4 videos" contain images and videos already counted by Detective Ramos. There is no mention at all of any overlap or double counting, no one seems to have compared the list of images or videos that Detective Ramos downloaded remotely in his "about 390 pictures and 3 videos" and cross-referenced it with the "about 210 images and 4 videos" that Debra Healy apparently found physically. What is clear is that Detective Ramos describes the pictures and videos very vaguely "about 390 pictures and 3 videos", and Debra Healy describes the picture and videos equally vaguely "about 210 images and 4 videos", but when it came time to prepare a sentencing report, that vague language disappeared and now it is stated that "Specifically, there were 600 pictures/images and 7 videos."

It is unclear how the evidence goes from an inexact amount of photos and videos from Detective Ramos with no supporting evidence, plus an inexact amount of photos and videos from Debra Healy with no supporting evidence, but when added together it makes the precise amount of 600 pictures/images and 7 videos.

29. **Specific Offense Characteristics:** The offense involved 600 or more images. Specifically, there were 600 pictures/images and 7 videos. Pursuant to USSG 2G2.2, comment. [(n.4(B)(ii)], each video shall be considered to have 75 images, which is equal to 525 images. The total amount of images in this offense is 1,125. Therefore, the offense level is increased by 5 levels. USSG § 2G2.2(b)(7)(D).

In order to know the real numbers, there needs to be a list of the 390 images and 3 videos from Detective Ramos compared with a list of the 210 images and 4 videos from Debra Healy, to avoid counting the same files twice. There should also be information about how files were determined to be child pornography, as well as how specific enhancements were deemed applicable, for example the USSG 2G2.2(b)(4) enhancements.

10

**Investigator Debra Healy**

Investigator Debra Healy of the Seminole County Sheriff's Office created a "Computer Forensic Examination Report" dated May 4, 2011. This report was created using Guidance Software's EnCase and saved as an HTML file with clickable links, but the reports that those links open were not included. Therefore, we have only the main body or summary of the report, which does not state whether or not child pornography was found on any of the devices. There are several possibilities. Either no CP files were found on any of the devices, or indicia of CP was found but not the files themselves, for example maybe names of recently-opened files were found in Windows Registry and the names suggest CP-related files but the files are not found, or perhaps there were actual CP files found on one or more of the devices. Without seeing the actual report, it's impossible to know.

This main page of the report from Debra Healy has no evidence of any child pornography at all; it simply suggests that there were reports done that were not included and we can only guess at their contents. From the main body of the report, which is all that I was provided, there are no numbers of how many child pornography files were found, if any.

**CPS Report**

Detective Charles Ramos provided a screenshot of the CPS platform, accessible through the website www.gridcop.com, that shows that the IP address 24.110.44.237 was "observed on 0 networks" but was nevertheless "observed sharing 1 unique files". This is counter-intuitive and probably contains a mistake, since how can someone share a file but not be on any networks? CPS is a platform run by a private foundation in Florida called "Child Rescue Coalition" which scans multiple file-sharing networks for child abuse imagery.



This is an odd report, for 2 reasons. First, how can a computer user share a file without connecting to a network? This seems like an error in CPS. Secondly, how is it that Detective Ramos says he downloaded "numerous" child pornography files from this IP address, but CPS did not detect any network activity at all? Why was this CPS screenshot included at all, since it just states that this IP address "has been observed on 0 networks between the dates December 21, 2010 and January 1, 1970."

On page 26 of the book "Digital Child Pornography: A Practical Guide for Investigators" it confirms that CPS tracks Gigatribe and records any GUID or user account that connects to the network and attempts to upload or download known child pornography. In this case, this IP address was not seen connecting to any of the networks that CPS monitors, but CPS says that 1 file was being shared without specifying what that file is, and there is no GUID or user account associated with the file. See screenshot from forensic textbook below:

# Digital Child Pornography: A Practical Guide for Investigators

CHAD M.S. STEEL

Because individuals on the Gnutella network and other peer-to-peer networks share files that may depict known victims and can be confirmed by hash value to be child pornography, efforts have been made to log any individual sharing previously identified or suspected content. Gridcop, an effort funded by TLO, and RoundUp, a tool used by most of the ICAC taskforces, both track this sharing. RoundUp focuses on the Gnutella network, while Gridcop's CPS tracks Gnutella, FastTrack, Ares, BitTorrent, eDonkey, Gigatribe, Motherless, IRC, and several other sharing mechanisms. As a result, investigators can get an historical picture of the activities associated with a particular IP address or GUID (a number that uniquely identifies a particular installation of peer-to-peer software). Investigators can also use law-enforcement specific peer-to-peer clients like ShareazaLE to download offending content from subject's machines for evidentiary purposes and to obtain probable cause to apply for a warrant.

**Waiver of Ownership Letter**

There is a letter dated January 28, 2016 sent to the Miami FCI by the FBI, asking if Mr. Ramnaraine would like his hard drives returned or destroyed. It's true that if the hard drives had been unmodified by the FBI, and they had ever contained contraband, they would not be able to be returned to their owner. The fact that the FBI is asking if Mr. Ramnaraine wants to appoint someone to accept them on his behalf suggests either (a) that all the hard drives in question have been forensically wiped by the FBI and contain no data, or (b) that the FBI does not believe that the devices contain contraband evidence eg. CP photos or videos, or (c) that the department that sent this letter has made a mistake in sending it.

**Conclusions:**

In conclusion, had I been retained as an expert in computer forensics on this case before it went to trial or before a plea agreement had been signed, I would have gotten all available reports from law enforcement concerning both the remote investigation phase and the post-seizure phase. Any missing information would have been specially requested from law enforcement, and anything that did not make sense would have been pointed out and clarifications requested. I would have explained what the reports meant to the attorney for Mr. Ramnaraine, highlighting any problematic areas, missing information, or mistakes. I would have gone onsite to the law enforcement agency storing the Dell laptop and 2 USB drives and processed them in EnCase and IEF/AXIOM to better understand what exactly was found and compared my own reports with those made available by law enforcement. Any CP photos or videos would have been carefully counted. Child erotica or other non-CP photos or videos would have been discounted from the number of files. I would have looked for telltale signs that any CP photos or videos had been searched intentionally or downloaded accidentally, and if they had been viewed or not. I would have looked at the settings for Gigatribe and reported any modifications to the default settings. Any log files for Gigatribe, especially concerning uploading or distribution, would have been saved and reported. I would have carved unallocated disk space and un-deleted files and determined if the user believed he was not in possession of CP, or if the user knew he was in possession of CP and was collecting it on purpose. If necessary, I would have testified at trial and/or at sentencing to ensure that accurate information was given to the court.

Sincerely,

*Thomas M. Pullen*     5/11/20

Thomas Pullen
Certified Computer Forensic Examiner

Sworn to (or affirmed) and subscribed before me, **by means of physical presence,** _11th_ day of May, 2020, by Thomas Pullen.

_Cynthia B. Naismith_
Notary Public, State of Florida

> CYNTHIA B. NAISMITH
> Notary Public – State of Florida
> Commission # GG 182051
> My Comm. Expires Feb 4, 2022
> Bonded through National Notary Assn.

Stamp commissioned name of notary

\_\_\_\_\_ Personally known
__✓__ Produced Identification
Type of identification produced _Florida Drivers License_

11